NUNC PRO TUNC OPINION[1]
[1] This opinion replaces, nunc pro tunc, the original opinion released June 12, 2008, and is effective as of that date.
{¶ 1} This is an expedited appeal from a decision and judgment from the Franklin County Court of Common Pleas denying declaratory judgment, injunctive relief, and a writ of mandamus to an unsuccessful bidder for painting work in connection with construction of the Huntington Park Baseball Stadium in Franklin County, Ohio. The plaintiffs-appellants in this appeal are the Associated Builders Contractors of Central Ohio ("ABC") and The Painting Company. Defendants-appellees are the Franklin County Board of Commissioners and the individual members thereof, hereinafter "the Commissioners" or "appellees."
 {¶ 2} The county received two bids for painting work on its new ball park: The Painting Company bid $770,010 and W. F. Bolin Company ("Bolin"), which is not a party to this appeal, submitted a bid of approximately $46,000 higher. The county's assistant director of Public Facilities Management, Richard Myers, reviewed the bidding companies and concluded that The Painting Company did not meet the county's "quality contracting standards" due to a number of prevailing wage complaints filed against the company with the Ohio Department of Commerce, Labor and Worker Safety Division (formerly the Bureau of Wage and Hour). The Board of Commissioners eventually rejected The Painting Company's bid and awarded the contract to Bolin. Appellants then brought this action seeking injunctive relief based upon violations of Ohio's competitive bidding laws, a writ of mandamus ordering an award of the contract to The Painting Company, and declaratory judgment declaring that Franklin County's quality contracting standards *Page 3 
conflicted with and were pre-empted by Ohio's prevailing wage laws. After a bench trial, the trial court granted judgment for appellees on all aspects of the action, and appellants bring the following assignment of error:
 The Court below erred by denying Associated Builders Contactors of Central Ohio and The Painting Company mandamus, injunctive relief, and declaratory judgment against the Franklin County Board of Commissioners ("Franklin County").
 {¶ 3} Appellants raise three principal arguments in support of their contention that the county's award of the painting contract is invalid: appellants assert that the applicable portion of the published bid criteria is unconstitutionally void for vagueness, that the pertinent section is also invalid because it is pre-empted by Ohio's prevailing wage statutes, and that in addition to the defective published bid criteria the Commissioners in practice awarded the contract based on additional unannounced bid criteria.
 {¶ 4} Appellants seek three types of judicial relief in this case: (1) a writ of mandamus; (2) an injunction prohibiting award of the contract to other bidders; and (3) declaratory judgment. The injunctive relief sought by appellants hinges upon a suitable declaratory judgment construing the published bid criteria in their favor or finding that the contract was awarded under unannounced bid criteria. With respect to the requested writ of mandamus, appellants must demonstrate that (1) they have a clear legal right to the relief requested, (2) the Commissioners have a clear legal duty to perform the requested act, and (3) appellants have suffered an injury for which there is no plain and adequate remedy at law. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. As this case is now postured, appellants' right to a writ also turns on the same factors that would support declaratory judgment in their favor, and we will accordingly not separately *Page 4 
analyze the right to relief of mandamus as we review the trial court's grant of declaratory judgment to appellees.
 {¶ 5} "The intent of competitive bidding is to protect the taxpayer, prevent excessive costs and corrupt practices, and provide open and honest competition in bidding for public contracts." Cementech, Inc. v.City of Fairlawn, 109 Ohio St.3d 475, 2006-Ohio-2991, at ¶ 9. While Ohio law provides for award by the county of public contracts through competitive bidding to the "lowest and best" bidder, R.C. 307.90, the lowest bid is not necessarily the best by virtue of being the lowest, and "courts in this state should be reluctant to substitute their judgment for that [public] officials in determining which party is the single `lowest and best bidder.'" Cedar Bay Const., Inc. v. City ofFremont (1990), 50 Ohio St.3d 19, 21. "This discretion is not vested in the courts and the courts cannot interfere in the exercise of this discretion unless it clearly appears that the [public] authorities in whom such discretion has been vested are abusing the discretion so vested in them." Id. Franklin County enacted the bidding specifications at issue in this case, frequently referred to as the quality contracting standards, in 2002, and incorporated them in the published bidding requirements set forth in the project manual for the Huntington Park project. The section relied upon by the county in disqualifying The Painting Company is Section 8.2.4.15, which requires that bidders submit "information that the Bidder has not been debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years."
 {¶ 6} The Painting Company does not dispute that it has been cited, in one form or another, by the Ohio Department of Commerce for prevailing wage violations a *Page 5 
sufficient number of times to meet the standard for disqualification,if any type of prevailing wage complaint is sufficient to trigger the application of Section 8.2.4.15. It is the nature and effect of the citations involving The Painting Company, and specifically whether they rise to the level of "violations," that is disputed by appellants in this case.
 {¶ 7} We will first address appellants' contention that Section 8.2.4.15 is void and unenforceable because it is worded so imprecisely and vaguely that it fails to give a reasonable individual of ordinary intelligence fair notice and sufficient guidance to allow conformance to the law. City of Norwood v. Horne, 110 Ohio St.3d 353, 2006-Ohio-3799. Appellants assert that the term violations in relation to past prevailing wage disputes involving a contractor is impermissibly vague because it is neither explicitly defined by the county regulations nor susceptible to a common and unmistakable interpretation. Without further definition, appellants argue, violation encompasses an impermissibly broad range of possible prevailing wage disputes involving a contractor. Specifically, appellants argue that in drafting Section 8.2.4.15, theCommissioners could only have intended to include intentional violations of prevailing wage rules, which appellees would define as those in which a separate determination has been made that the contractor deliberately planned to misrepresent or conceal wages not meeting the prevailing wage standard.
 {¶ 8} The Painting Company points out that no such determination has ever been made against it in its prior prevailing wage disputes. Relying on deposition testimony from Department of Commerce officials, The Painting Company also points out that there is no appeal from an adverse prevailing wage determination unless an additional finding of intent is made. Because Section 8.2.4.15 refers to violations found after allappeals, *Page 6 
appellants argue, a violation that would not have given rise to an appeal could not be the subject of prohibition under Section 8.2.4.15.
 {¶ 9} As the trial court noted, the absence of an express definition of the term "violation" in the county's quality contracting standards leaves the door open for such arguments. The fact that the door is open for consideration of these arguments, however, does not mean that those arguments are not properly resolved in the county's favor. The county has chosen to interpret Section 8.2.4.15 to include any determination of a prevailing wage violation issued by the Department of Labor and Worker Safety, whether or not those violations were cooperatively settled by a contractor and regardless of whether any finding of intent was made. Undisputedly, The Painting Company has been the subject of a sufficient number of such prevailing wage violations in a relevant time period to be excluded under Section 8.2.4.15, if the broader interpretation ofviolation is applied. These settled violations may not have given rise to substantial penalties, nor been coupled with any finding of intent. Nonetheless, it is not impermissible to give a word employed in a statute or regulation its broadest employment merely because an entity subject to that regulation finds the outcome harsh.
 {¶ 10} The trial court examined the evidence before it pertaining to The Painting Company's prevailing wage violations and noted the phrasing of the determination letters issued by the Department of Labor and Worker Safety, which expressly notified the company that an "audit had revealed violations of the Ohio Prevailing Wage Law, Chapter 4115 of the Ohio Revised Code." (Trial court decision, at 13.) We agree with the trial court's conclusion that the pertinent administrative agency's characterizations of these incidents as "violations" is the most reliable indicia to the subject company of the nature of *Page 7 
its conduct and gives clear notice of the impact it would have on the bid process with Franklin County.
 {¶ 11} Nor do we find that the reference to "appeals" in Section 8.2.4.15 limits its application only to violations giving rise to such a right of appeal; the fact that The Painting Company chose to settle its prevailing wage disputes without pursuing the controversies to the point where they might have given rise to a right of appeal does not nullify the impact of such violations for purposes of the contracting standards. It is entirely reasonable to interpret the reference to appeals in Section 8.2.4.15 as precluding consideration of any violations for which appeals are yet pending, and conversely unreasonable to interpret the term as requiring reliance only on violations from which an appeal might have been taken.
 {¶ 12} Ultimately, we find that the quality contracting standards in Section 8.2.4.15 as enacted by the Commissioners clearly set forth the number of prevailing wage violations that could disqualify a bidder from eligibility for award of a contract, and they are not void for vagueness. The wisdom of choosing to exclude contractors who may, in fact, have only minor violations is a matter of public policy left to the discretion of the Commissioners and not for review by this court.
 {¶ 13} We now turn to the question of whether Sec. 8.2.4.15 is void because it conflicts with and is pre-empted by Ohio's general scheme of prevailing wage law. Generally, prevailing wage law applies to construction projects for public improvements paid for in part or in whole by public funds, R.C. 4115.10(A), and the prevailing wage generally is defined as the rate paid for comparable trades or occupations and the location where the work is being performed, R.C. 4115.05. *Page 8 
 {¶ 14} "[I]n determining whether an ordinance is in conflict with general laws, the test is whether the ordinance permits or licenses that which the statute prohibits and vice versa." Eastlake v. Bd. of Bldg.Stds. (1981), 66 Ohio St.2d 363, 368.
 {¶ 15} Appellants assert that, since the state has debarment provisions that disqualify bidders on the basis of past prevailing wage disputes, Franklin County could not create a harsher standard when considering its own bids. Appellants are unable to point to any provision in R.C. Chapter 4115 that prohibits public authorities from considering a contractor's history of compliance or non-compliance with prevailing wage law when considering which bid is the lowest and best for a particular job. To the contrary, at least two Ohio courts have considered comparable exclusions for contractors not otherwise debarred from public bidding under state law, and found no prohibition to such heightened standards. State ex rel. Navratil v. Medina Cty. Commrs.
(Oct. 11, 1995), 9th Dist. No. 2424-M, jurisdictional motion overruled (1996), 75 Ohio St.3d 1412; Steingass Mechanical Contracting, Inc. v.Warrensville Heights Bd. of Edn., 151 Ohio App.3d 321, 2003-Ohio-28. Because we can find neither authority nor rationale that establishes a conflict between Franklin County's reliance on past prevailing wage violations to exclude a contractor and the state's general scheme of prevailing wage regulation, we find that Sec. 8.2.4.15 is not invalid on this basis.
 {¶ 16} Finally, we turn to appellants' contention that the Commissioners used an "unannounced" criterion to evaluate The Painting Company's bid. Appellants argue that when the quality contracting standards were adopted in 2002, the intent was only to exclude serious or intentional violations of prevailing wage law. Appellants presented the deposition testimony of a former Franklin County Commissioner and others to this effect. *Page 9 
Appellants also assert that, prior to a change in membership of the Board of Commissioners, no contractors were excluded on this basis, but as it is now constituted, the Board of Commissioners has undertaken to apply Sec. 8.2.4.15 as an instrument, in conjunction with trumped-up violations brought by competing union officials, to exclude non-union bidders. It is this change of policy, rather than any failure to properly announce and disseminate Sec. 8.2.4.15 in connection with the Huntington Park project, that constitutes the supposed unannounced criterion.
 {¶ 17} We begin by noting that a court may not resort to legislative history, such as the comments of the former Franklin County Commissioner relied on by appellants, to alter the clear wording of the legislative enactment. Cleveland Trust Co. v. Eaton (1970), 21 Ohio St.2d 129, 138. Appellants cite the case of City of Dayton ex rel., Scandrick v.McGee (1981), 67 Ohio St.2d 356, for the proposition that reliance on unannounced criteria in awarding a contract will constitute an abuse of discretion. We do not disagree with that basic proposition, butScandrick is not comparable to the case before us. InScandrick, the court emphasized that public authorities had excluded a bidder in preference to another who resided in the city. The existence of this supposed residency requirement was not revealed until after bids were open. Scandrick, at 359. In contrast, in the present case, the Board of Commissioners rejected The Painting Company's bid on the basis of Section 8.2.4.15, whose language and requirements were plainly put forth in connection with all bids on the Huntington Park project. No new policy was disclosed after bids were made or opened, and thus, our case does not resemble the abuse of discretion found in Scandrick. Nor can we find that an abuse of discretion occurred even if the Board of Commissioners had recently adapted its interpretation of Section 8.2.4.15 *Page 10 
in applying it more restrictively than envisioned by the former County Commissioner and employees. The currently elected Franklin County Board of Commissioners has given its interpretation of the pertinent regulations, and we have found that that interpretation reasonably comports with the actual wording of the regulations. More to the point, even the testimony cited by appellants did not establish that prior to the rejection of The Painting Company's bid, any contract was ever awarded by the Board of Commissioners to a contractor who did not meet the standards of Section 8.2.4.15, and thus that a substantial change in policy took place such that contractors could not reasonably rely on the words and application of that section when submitting bids.
 {¶ 18} In summary, we find that the pertinent county bidding specifications are not void for vagueness, that the county did not accept and reject bids based on unannounced criteria, and that the pertinent specifications do not impermissibly conflict with Ohio's prevailing wage statutes. The trial court did not err in granting declaratory judgment for appellees, and as a result, appellants are neither entitled to a writ of mandamus nor an injunction.
 {¶ 19} Accordingly, appellants' assignment of error is overruled and the judgment of the Franklin Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and BROWN, JJ., concur. *Page 1