[Cite as *Beder v. Cerha Kitchen & Bath Design Studio, L.L.C.*, 2022-Ohio-4463.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

ILIA BEDER, et al.,

        Plaintiffs-Appellants,

    - v -

CERHA KITCHEN AND BATH
DESIGN STUDIO, LLC, et al.,

        Defendants-Appellees.

**CASE NO. 2022-G-0008**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 P 000605

## O P I N I O N

Decided: December 12, 2022
Judgment: Affirmed in part, reversed in part, and remanded

*Daniel J. Myers,* Myers Law, LLC, 600 East Granger Road, Second Floor, Cleveland, OH 44131 (For Plaintiffs-Appellants).

*Thomas C. Holmes,* Holmes Legal Services, LLC, 34194 Aurora Road, Suite 295, Solon, OH 44139 (For Defendants-Appellees).

JOHN J. EKLUND, P.J.

{¶1}   Appellants, Ilia Beder and Raimonda Beder, appeal the February 2, 2021 and January 24, 2022 judgments of the Geauga County Court of Common Pleas, respectively, granting summary judgment in favor of Appellees, Cerha Kitchen and Bath Design Studio, LLC, Custom Remodeling and Design, LLC, Jim Cerha, and Laura Cerha.

{¶2}   This case originated as a consumer lawsuit Appellants filed against Appellees, the contractors remodeling their house.  Appellants' complaint alleged four counts: (1) Breach of Contact; (2) Unjust Enrichment; (3) violations of the Consumer

Sales Practices Act ("CSPA"); and, alternatively, (4) violations of the Home Construction Service Suppliers Act ("HCSSA"). Appellees filed an answer and counterclaim against Appellants for defamation and breach of contract claiming that Appellants had unexpectedly terminated the contract without cause.

{¶3} The court granted summary judgment in Appellants' favor on the defamation counter claim after Appellees failed to oppose or present evidence of defamation. Laura Cerha was then dismissed from the litigation. Appellees sought summary judgment on their breach of contract counterclaim and the claims in Appellants' complaint. The court granted summary judgment on all issues except: (1) Raimonda Beder's liability for breach of contract, and (2) damages for the Beder's breach of contract. The case proceeded to a bench trial on the remaining issues. At trial, appellees stipulated that Raimonda was not liable for the breach of contract. The trial court awarded Appellee Cerha Kitchen and Bath Design Studio, LLC $1,297 in damages and $1,011.66 in interest for damages on its breach of contract counterclaim.

{¶4} Appellants timely appealed and raise three assignments of error.

{¶5} First assignment of error: "The trial court committed prejudicial error when it granted summary judgment in favor of Appellees on Appellants' CSPA claims, and/or later refused to reconsider that grant. (T.d. 94, p. 1-2; T.d. 106)."

{¶6} Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

2

Civ.R. 56(C). An appellate court reviews a summary-judgment ruling de novo. *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶6.

{¶7} Under their first assignment, Appellants assert that the trial court erred in ruling that the HCSSA and not the CSPA applied because the transaction involved the remodel of an existing home, not the building of a new home.

{¶8} "The Consumer Sales Practices Act prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990); R.C. 1345.02; R.C. 1345.03. The HCSSA, similarly, prohibits certain deceptive acts in connection with work relating to home construction service and seeks to protect individual homeowners entering into such contracts. *See* R.C. 4722.01 et seq.

{¶9} Prior to the enactment of the HCSSA on August 31, 2012, agreements between remodelers and homeowners were "consumer transactions" within R.C. Chapter 1345. *See Danley v. Bialko,* 9th Dist. Lorain No. 91CA005024, 1991 WL 199910, *1 (Oct. 2, 1991); *Collins v. Kingsmen Ents., Inc.,* 8th Dist. Cuyahoga No. 66433, 1995 WL 23345, *2 (Jan. 19, 1995). However, with the enactment of the HCSSA, the definition of "consumer transaction" was amended to exclude "transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code * * *." R.C. 1345.01(A).

{¶10} A "home construction service contract" is "a contract between an owner and a supplier to perform *home construction services*, including services rendered based on a cost-plus contract, for an amount exceeding twenty-five thousand dollars." (Emphasis added.) R.C. 4722.01(C). "Home construction service" means "*the construction of a*

3

*residential building*. 'Home construction service' does not include construction performed on a structure that contains four or more dwelling units, except for work on an individual dwelling unit within that structure, or construction performed on the common area of a condominium property." (Emphasis added.) R.C. 4722.01(B). "Residential building" means a "one-, two-, or three-family dwelling and any accessory construction incidental to the dwelling." R.C. 4722.01(F).

**{¶11}** At issue is whether "home construction service," i.e., the "construction of a residential building," includes remodeling. We conclude that it does not.

**{¶12}** Our paramount concern in examining a statute is the legislature's intent in enacting the statute. *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, 1793 N.E.3d 1169, ¶ 13. To discern that intent, we first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage. *Id.*; *see* R.C. 1.42. When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy. *Gabbard* at ¶ 13.

**{¶13}** R.C. 4722.01 does not define "construction." The Supreme Court of Ohio has previously defined "construct" as "'*to build*; put together; make ready for use" and "construction" as "'[t]he *creation of something new*, as distinguished from the repair or improvement of something already existing.'" (Emphasis sic.) *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382 627 N.E.2d 538 (1994), quoting *Black's Law Dictionary* 312 (6th Ed.1990); *see also United States v. Narragansett Improvement Co.*, 571 F.Supp. 688, 693 (D.R.I. 1983) ("The uniform conclusion is that 'construction' imports the creation of something new and original that did not exist before").

4

{¶14} We acknowledge that the current definition of "construction" in Black's Law Dictionary no longer expressly distinguishes between "new" and "existing." However, this does not mean that the *Celebrezze* court's interpretation is invalid. "The Legislature is presumed to know the decisions of [the Supreme Court of Ohio], and, where it uses words or phrases that have been defined or construed by th[e] court, it is presumed have used them in the sense that they have been so defined or construed." *Tax Comm. of Ohio v. Sec. Sav. Bank & Trust Co. of Toledo*, 117 Ohio St. 443, 450, 159 N.E. 570 (1927). Therefore, we must presume that the legislature intended the term "construction" to have the meaning set forth in *Celebrezze.*

{¶15} The dissent relies on Merriam Webster to discern the "ordinary meaning" of "construction." The problem with this is, and always has been, that what the "ordinary meaning" of a word is in a particular walk of life, profession or business often varies wildly. For example, to an art teacher, "construction" may connote a type of paper. To a grammatician, it may mean a learned pairing of linguistic patterns with meanings. To a lawyer or judge, it may refer to the "art of seeking the intention of the legislature" in writing a statute or other enactment and applying it to a given set of facts. And, to a contractor, what it means may depend on the kind of work they contract to do. In each case, what is the "plain and ordinary" meaning of the word to some may mean nothing (or at least something else) to others. Dictionary definitions are blunt tools, at best.

{¶16} Appellees contend that the legislature intended "construction" to have a broader meaning, noting that the initial version of H.B. 383 defined "home construction services" as "the construction of a *new* residential building or the substantial rehabilitation of a residential building," while the final version eliminated the word "new" and the

5

Case No. 2022-G-0008

"substantial rehabilitation" phrase. (Emphasis added.) However, a court may only consider legislative history to determine the meaning of an *ambiguous* statute. *See* R.C. 1.49(C). A court may not resort to legislative history to alter the clear wording of the legislative enactment. *DIRECTV, Inc. v. Levin*, 181 Ohio App.3d 92, 2009-Ohio-636, ¶ 33 (10th Dist.).

{¶17} When construed in context, we conclude that "home construction service," i.e., the "construction of a residential building," encompasses the building of (1) one-, two-, or three-family dwellings, (2) accessory structures incidental to those dwellings, and (3) individual dwelling units within structures that contain four or more dwelling units. Accordingly, "home construction service" does not encompass remodeling. Therefore, the trial court erred as a matter of law in determining that the HCSSA applied rather than the CSPA.

{¶18} Appellants' first assignment of error has merit. We reverse this aspect of the trial court's judgment and remand for further proceedings.

{¶19} Appellant's second assignment of error states:

{¶20} If the CSPA does not apply to the transaction, the trial court committed prejudicial error when it granted summary judgment in favor of Appellees on Appellants' HCSSA claims.

{¶21} This assigned error is rendered moot based on our disposition of Appellant's first assignment of error.

{¶22} Appellant's third assignment of error states:

{¶23} The trial court committed prejudicial error when it granted summary judgment in favor of Appellees as to liability on their breach of contract claims against Ilia Beder and Ilia Beders' breach of contract and unjust enrichment claims against Appellees.

6

{¶24} Under this assigned error, appellants argue that the trial court erred in determining Ilia Beder's removal of appellees from the project was a breach of contract. In support, appellants argue that appellees lacked the legally necessary contractor registration, unreasonably delayed their work, performed defective work, and were abusive to appellants. Appellants also argue that the trial court erred in determining that no question of fact remained concerning the performance of work or initial, material breach by appellees. We address each contention in turn.

{¶25} In holding that appellees' failure to obtain permits or register with the City of Mentor, the trial court stated:

> {¶26} The Court cannot accept Plaintiff's contention that no contract existed because the Defendant or its subcontractors had not registered with the city of Mentor thereby, Plaintiff's argue, making the entire contract "illegal." Plaintiffs have not demonstrated to this Court's satisfaction that such a result is appropriate in cases where tradesmen fail to register. Moreover, Plaintiffs have failed to provide any evidence creating an issue of fact concerning Defendants sworn testimony that a city official informed Defendants that such registration was unnecessary.

{¶27} "In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party." *Telecom Acquisition Corp. I v. Lucic Ents., Inc.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 93 citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). "When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards." *Lucic Ents., supra,* citing *Finn v. Nationwide Agribusiness Ins. Co.*, 3d Dist. Allen No. 1-02-80, 2003-Ohio-4233, ¶ 39.

7

{¶28} Appellants produced the relevant part of the Mentor Codified Ordinance, which stated that contractors are required to register and that failure to register constitutes a fourth-degree misdemeanor. Appellees' sworn testimony is that when they called the Mentor Building Department, they were told they did not need to register. Appellants in this case were the non-moving party. However, the trial court viewed appellees' argument that the City of Mentor Building Department told them that no registration or permit was required as more convincing than appellants' assertion that regardless of what the building department said, the local ordinance requires registration. It was improper for the trial court to engage in this determination of credibility at this stage, and to weigh this factor in the moving party's favor.

{¶29} This necessarily raises a question of law: whether a violation of the Mentor Codified Ordinance rendered the contract void and unenforceable. If it does not, the trial court's error would be harmless. As discussed below, however, we find that a contract that violates a valid codified ordinance is void and unenforceable, and thus, the court's error was not harmless.

{¶30} The Eighth District in *McClennan v. Irvin & Co.*, 8th Dist. Cuyahoga No. 36798, 1978 WL 217728 (Jan. 30, 1978), noted that "[a]s a general rule, professional contracts which violate registration statutes are unenforceable." *Id.* at *4. In that case, an architectural firm entered into a contact to perform architectural services. The firm had only one employee who was a registered architect, and he "delegated the 'entire job * * *,' a senior architectural designer but not an architect, under [the registered architect's] supervision." *Id.* at *3. The senior architectural designer was to perform all the work; the registered architect never personally visited the project site and testified he believed it

8

was unnecessary for him to do so. The relevant statute in that case required anyone engaging in the practice of architecture to be a registered architect. The court found the services performed by the party in that case was the practice of architecture. Under the circumstances in that case, the Eighth District reversed the trial court, finding that the firm could not recover for services rendered under the "illegal contract."

{¶31} Similarly, the Fourth District has noted that "[t]he general rule is that a contract entered into by a person engaged in a business without taking out a license as required by law is void and unenforceable and that where a license or certificate is required by statute as a requisite to one practicing a particular profession, an agreement of a professional character without such license or certificate is illegal and void." *Elephant Lumber Co. v. Johnson*, 120 Ohio App. 266, 268 (4th Dist.1964), citing 53 C.J.S. Licenses § 59, p. 711; 33 American Jurisprudence, 384; 34 Ohio Jurisprudence 2d 388. "It is also a well established rule that a contract which cannot be performed without a violation of a statute is void." *Elephant Lumber,* citing *National Transformer Corp. v. France Mfg. Co.*, 215 F.2d 343 (6th Cir. 1954) and *Bell v. Northern Ohio Tel. Co.*, 149 Ohio St. 157, 78 N.E.2d 42 (1948).

{¶32} Appellees attempt to distinguish these cases from the facts at bar by arguing that "courts have refused to apply these cases to lawsuits that are not entirely on point." In support, they cite *Greenspan v. Third Fed. Savings & Loan Assoc.,* 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567. However, *Greenspan* declined to extend these arguments to claims related to the unauthorized practice of law. We find no such material distinction between the above-cited cases and the facts at bar.

{¶33} Mentor Codified Ordinance 1307.01 states in pertinent part:

9

{¶34} No contractor shall perform any work in the City without **first obtaining** a certificate of registration from the Building Inspection Division. Any contractor who contracts with the general public to perform work regulated by this chapter **must be registered** with the City to do such work. (Emphasis added.) *Id.*

{¶35} The ordinance plainly states the contract shall be registered before the performance under a contract begins. In this case, appellees began performance under the contract without registering, but assert they were not required to register.

{¶36} The general rule remains; contracts that violate statutory law are void and unenforceable. We see no material distinction between a contract that violates a statute versus one that violates a valid city ordinance. Accordingly, if the question of fact is resolved in appellants' favor and it is determined that appellees did not obtain the required registration prior to performing work under the contract with appellants, the contract would be illegal and unenforceable. Thus, the court's error in weighing the testimony of appellees in favor of appellees as the moving party, was not harmless error.

{¶37} Because the trial court improperly weighed the evidence pertaining to appellees registration requirements, we find the trial court erred in finding that no question of material fact remained as to whether appellees were required to register under the Mentor Codified Ordinance. This conclusion does not, however, preclude appellees from raising equitable claims, if applicable, in the lower court. Because we find any such error would not be harmless, we reverse the trial court's grant of summary judgment on Counts I and II of the appellants' initial complaint.

{¶38} As to appellants' arguments that they did not breach the contract because appellees unreasonably delayed their work, performed defective work, and were abusive to appellants, we find no error on the part of the trial court. Nor do we find error in the

10

trial court's determination that no question of fact remained concerning the performance of work or initial, material breach by appellees.

{¶39} Appellees gave a verbal estimate of the time to complete the project at the start of the work; appellees testified that the extensions of time were due to appellants' requests for project changes and custom-ordered items. Nothing in the record contradicts those assertions. Additionally, we agree with the trial court that appellants' assertion that appellees yelled at him and made him stay in his room would constitute a tort claim and is irrelevant to appellants' action for breach of contract. Finally, appellees testified that they addressed appellants' complaints for defective work to within HBA standards. Appellants did not present evidence to the contrary; they merely stated it was not completed to their standards.

{¶40} In light of the foregoing, appellants' third assigned error has merit.

{¶41} The judgments of the Geauga County Court of Common Pleas are affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.


MARY JANE TRAPP, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

_____

11

Case No. 2022-G-0008

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶42} I respectfully dissent and would find that remodeling contracts such as the one at issue would fall under the HCSSA.

{¶43} There is no clear agreement or precedent as to the definition of "construction" as defined in R.C. 4722.01. When the language of statutes is ambiguous, "'words should be given their common, ordinary and accepted meaning unless the legislature has clearly expressed a contrary intention.'" *State v. Hix*, 38 Ohio St.3d 129, 131 (1988), quoting *State v. Singer,* 50 Ohio St.2d 103, 108 (1977). Courts have often looked to dictionaries to provide guidance as to the "common, ordinary, and accepted meaning." Merriam Webster's Dictionary defines "construction" as "the process, art, or manner of constructing something." Merriam-Webster, *Construction*, www.merriam-webster.com/dictionary /construction (accessed June 15, 2022). Similarly, "constructing" is defined as "to make or form by combining or arranging parts or elements; build." Merriam-Webster, *Construct*, www.merriam-webster.com/dictionary/construct (accessed June 15, 2022). These definitions do not limit "construction" to the creation of something new.

{¶44} I recognize that the Supreme Court of Ohio has held that the meaning of the word "construction" is the "creation of something new, as distinguished from the repair or improvement of something already existing." *State. ex. rel. Celebrezze v. Nat'l Lime & Stone Co.,* 68 Ohio St.3d 377, 382 (1994), quoting Black's Law Dictionary (6 Ed.1990) 542 and *U.S. v. Narragansett Improvement Co.*, 571 F.Supp. 688, 693 (D.R.I.1983). However, that 1994 case relied on a definition in Black's Law Dictionary that has since been updated. Moreover, the *Celebrezze* court's focus in that case was not the definition

12

of "construction" but "whether the replacement of [a particular] mill in 1987 with a virtually identical mill constituted the 'installation' of an air contaminant source, as that term is defined and set forth in relevant administrative rules." *Id.* at 381. The Court's definition of "construction" in *Celebrezze* was dicta and interpreted in a different context. I agree the context of words is necessary for an accurate interpretation of their meaning. Moreover, the meaning of words can change over time. I believe this 1994 *Celebrezze* definition of "construction", which, notably, was used 18 years prior to the enactment of the HCSSA, is inconsistent with our current understanding of the word.

{¶45} Additionally, the legislative history of the statute supports a definition of construction that includes remodeling. As introduced, the bill which would eventually become the HCSSA and modify the CSPA initially defined "home construction service" as "the construction of a new residential building or the substantial rehabilitation of a residential building. 'Home construction service' does not include construction performed on a structure that contains four or more dwelling units, except for work on an individual dwelling unit within that structure, or construction performed on the common area of a condominium property." 2012 Am.Sub. H.B. No. 383. The final definition of "home construction service" as codified eliminated "new" and "substantial rehabilitation of a residential building" from its definition. The modification of the definition in this way evidences an intention for the HCSSA to include work not only on new buildings but to existing structures as well. This is further supported by the inclusion of "'work on an individual dwelling unit within that structure" in the R.C. 4722.01 definition. *Id.* If the definition of construction was limited to the construction of new structures, and not modifications of existing structures, that phrase would be effectively meaningless.

13

{¶46} Finally, the General Assembly has more recently specifically defined construction to include new work as well as remodeling in R.C. 4115.03(B)(2). Given that "construction" is not defined by R.C. 4722.01, I see no reason to deviate from the definition as used elsewhere in the Revised Code, as it is consistent with the current common, ordinary, and accepted meaning of "construction" used in this context.

{¶47} Thus, I would find remodeling contracts that meet the other statutory requirements of the HCSSA fall under the HCSSA, and not the CSPA. Accordingly, I dissent.

14