DIRECTV, INC. AND ECHOSTAR SATELLITE, L.L.C., PLAINTIFFS v. STATE OF NORTH CAROLINA, THE NORTH CAROLINA DEPARTMENT OF REVENUE, AND E. NORRIS TOLSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF REVENUE, DEFENDANTS

No. COA05-1250

(Filed 1 August 2006)

**Taxation— satellite service—sales tax—commerce clause**

The statute imposing a state sales tax on providers of "direct-to-home satellite service" but not on cable television service, N.C.G.S. § 105-164.4(a)(6), does not violate the Commerce Clause of the United States Constitution either facially or in practical effect because: (1) the differential tax results solely from differences between the nature of the provision of satellite and cable services, and not from the geographical location of the businesses; (2) neither satellite companies nor cable companies are properly characterized as an in-state or out-of-state economic interest; (3) the dormant Commerce Clause prohibits discrimination against the interstate marketing for multichannel video programming, but it does not necessarily prohibit discrimination against programmers in that market who deliver programming by satellite as opposed to cable; (4) the imposition of the sales tax on satellite companies has equalized the local franchise taxes already imposed on cable companies; and (5) the record is devoid of any evidence that this tax has created an undue burden on interstate commerce. U.S. Const. art. I, § 8, cl. 3.

Appeal by Plaintiffs from judgment entered 26 May 2005 by Judge Clarence E. Horton, Jr., in Superior Court, Wake County. Heard in the Court of Appeals 9 May 2006.

**DIRECTV, INC. v. STATE**

[178 N.C. App. 659 (2006)]

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James D. Blount, Jr., Walter R. Rogers, Jr., Christopher G. Smith; and Steptoe & Johnson, by Betty Jo Christian and Mark F. Horning for plaintiff-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart and Assistant Attorney General Michael D. Youth for the State.*

WYNN, Judge.

A tax statute does not violate the Commerce Clause of the United States Constitution when the differential tax treatment of "two categories of companies results solely from differences between the nature of their businesses, [and] not from the location of their activities."[1] In this case, Plaintiffs contend that section 105-164.4(a)(6) of the North Carolina General Statutes, which imposes a sales tax on "[d]irect-to-home satellite service," but not on cable television service,[2] discriminates against satellite providers and favors cable companies on its face and in its practical effect. Because the differential tax results solely from differences between the nature of the provision of satellite and cable services, and not from the geographical location of the businesses, we affirm the trial court's grant of summary judgment to the State of North Carolina.

The facts pertinent to this appeal indicate that Plaintiffs DIRECTV, Inc. and EchoStar Satellite, L.L.C., provide direct broadcast satellite service to subscribers in North Carolina, as well as to subscribers throughout the nation. To distribute satellite services to their customers, satellite operators beam television programming to receiver "dishes" affixed directly to subscribers' homes from satellites stationed at fixed altitudes above the earth's equator. In contrast, cable companies provide television programming to their customers using local distribution facilities. Specifically, cable companies distribute their programming using coaxial or fiber optic cables that are laid across the state in a ground-based network. Notwithstanding these differences in the provision of television programming to their customers, satellite and cable companies utilize satellites at some point to provide service to their subscribers, and both require ground equipment located in North Carolina and outside

---

1. *Amerada Hess Corp. v. Director, Div. of Taxation, New Jersey Dep't of the Treasury*, 490 U.S. 66, 78, 104 L. Ed. 2d 58, 70 (1989) (citation omitted).

2. N.C. Gen. Stat. § 105-164.4(a)(6) (2003).

**DIRECTV, INC. v. STATE**

[178 N.C. App. 659 (2006)]

North Carolina to effect delivery of their programming to North Carolina subscribers.

Before 2001, North Carolina's sales tax did not apply to the retail sale of either satellite or cable service. In 2001, the General Assembly enacted a new law entitled "Equalize Taxation of Satellite TV and Cable TV." 2001 N.C. Sess. Laws. 424, § 34.17. This new law, codified in section 105-164.4(a)(6) of the North Carolina General Statutes, amended the tax code to impose a state sales tax on providers of "direct-to-home satellite service" equal to five percent of the companies' gross receipts. Thus, section 105-164.4(a)(6) imposed a five percent sales tax on satellite companies, but did not impose a sales tax on cable companies. Since 1 January 2002, the effective date of section 105-164.4(a)(6), Plaintiffs have paid the five percent sales tax, which they recouped from their subscribers in a line item on subscribers' monthly bills.

On 30 September 2003, Plaintiffs filed suit in Superior Court, Wake County, seeking a refund of nearly $30,000,000.00 in sales taxes paid pursuant to section 105-164.4(a)(6). In their complaint, Plaintiffs challenged the constitutionality of section 105-164.4(a)(6) on grounds that it (1) violates the Commerce Clause of the United States Constitution; (2) denies Plaintiffs equal protection of the laws in violation of the Equal Protection Clause of the United States Constitution; and (3) violates the rule of uniform taxation of Article V, Section 2, of the North Carolina Constitution.

On 18 January 2005, Plaintiffs moved for summary judgment on the Commerce Clause claim of their complaint, and the State simultaneously cross-moved for summary judgment on Plaintiffs' Commerce Clause and equal protection claims. On 26 May 2005, the trial court denied Plaintiffs' motion for summary judgment and granted the State's cross-motion for summary judgment in its entirety, thereby dismissing Plaintiffs' complaint. Plaintiffs appeal to this Court contending that section 105-164.4(a)(6) of the North Carolina General Statutes facially discriminates against interstate commerce; and the satellite service tax violates the Commerce Clause in its practical effect.

I.

The United States Constitution expressly grants to Congress the power to "regulate [c]ommerce with foreign [n]ations, and among the several [s]tates[.]" U.S. CONST. art. I, § 8, cl. 3. "[T]he Commerce Clause is more than an affirmative grant of power; it has a nega-

tive sweep as well" in that " 'by its own force' [it] prohibits certain state actions that interfere with interstate commerce." *Quill Corp. v. North Dakota*, 504 U.S. 298, 309, 119 L. Ed. 2d 91, 104 (1992) (quoting *South Carolina State Highway Dep't v. Barnwell Bros., Inc.*, 303 U.S. 177, 185, 82 L. Ed. 734, 739 (1938)). The United States Supreme Court has explained that the "dormant" Commerce Clause means that "[a] State is . . . precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between States." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 278 n.7, 51 L. Ed. 2d 326, 330 n.7 (1977) (citations and internal quotation marks omitted).

It is well established that a law is discriminatory if it "tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Chemical Waste Mgmt. v. Hunt*, 504 U.S. 334, 342, 119 L. Ed. 2d 121, 132 (1992) (internal quotation and citations omitted). "Discrimination" for purposes of the dormant Commerce Clause is "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472, 161 L. Ed. 2d 796, 809 (2005) (quoting *Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99, 128 L. Ed. 2d 13, 21 (1994)). Thus, no state may "impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business." *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 3 L. Ed. 2d 421, 427 (1959), *superseded by statute as stated in, Silent Hoist & Crane Co. v. Director, Div. of Taxation*, 100 N.J. 1, 10 n.1, 494 A.2d 775, 779 n.1 (1985). There are three ways in which a statute can discriminate against out-of-state interests: (1) it may be facially discriminatory; (2) it may have a discriminatory intent; or (3) it may discriminate in its practical effect. *Amerada Hess Corp.*, 490 U.S. at 75, 104 L. Ed. 2d at 68.

The statute at issue in this appeal is section 105.164.4(a)(6) of the North Carolina General Statutes which provides:

(a) A privilege tax is imposed on a retailer at the following percentage rates of the retailer's net taxable sales or gross receipts as appropriate. . . . (6) The rate of five (5%) applies to the gross receipts derived from providing direct-to-home satellite service to the subscribers in this State. A person engaged in the business of providing direct-to-home satellite service is considered a retailer under this Article.

N.C. Gen. Stat. § 105-164.4(a)(6). The statute defines "[d]irect-to-home satellite service" as, "[p]rogramming transmitted or broadcast by satellite directly to the subscribers' premises without the use of ground equipment or distribution equipment, except equipment at the subscribers' premises or the uplink process to the satellite." N.C. Gen. Stat. § 105-164.3(8) (2003).

On appeal, Plaintiffs contend that section 105-164.4(a)(6) discriminates against satellite providers and favors cable companies in two ways—on its face and in its practical effect.

II.

Plaintiffs first argue that section 105-164.4(a)(6) of the North Carolina General Statutes *facially discriminates* against interstate commerce. We disagree.

A state tax law is facially discriminatory where it (1) explicitly refers to state boundaries or uses other terminology that inherently indicates the tax is based on the in-state or out-of-state location of an activity, *see Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 407, 80 L. Ed. 2d 388, 403 (1984) (holding that a New York income tax provision that expressly provided a tax credit for shipping products from New York rather than other states violated the Commerce Clause); and (2) applies to entities similarly situated for Commerce Clause purposes. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299, 136 L. Ed. 2d 761, 780 (1997). "A facial challenge to a legislative act is . . . the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987). The challenger must establish that "no set of circumstances exists under which [the tax] would be valid." *Id.* Moreover, the challenger must demonstrate there is an "explicit discriminatory design to the tax." *Amerada Hess Corp.*, 490 U.S. at 76, 104 L. Ed. 2d at 69.

Plaintiffs contend that section 105-164.4(a)(6) is facially discriminatory because it conditions the applicability of the sales tax upon the in-state or out-of-state location of the programming distribution facilities. However, the plain language of section 105-164.4(a)(6) does not make any geographical distinctions, but merely describes one method of providing television programming services to North Carolina subscribers: the satellite companies' method, as opposed to the cable companies' method. The dormant Commerce Clause protects the interstate market for a particular product, but it does not

protect "the particular structure or methods operation in a retail market." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127, 57 L. Ed. 2d 91, 101 (1978).

Plaintiffs argue that section 105-164.4(a)(6) is analogous to the tax exemption the United States Supreme Court struck down as unconstitutional in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 82 L. Ed. 2d 200 (1984). In *Bacchus*, a Hawaii statute exempted okolehao, a brandy distilled from the root of a shrub indigenous to Hawaii, and pineapple wine from the State's liquor tax. *Id.* at 265, 82 L. Ed. 2d at 205. Because the tax exemptions applied only to locally produced beverages, the *Bacchus* Court concluded that the exemptions clearly had a discriminatory effect on interstate commerce. The Court noted that the legislature exempted okolehao and pineapple wine from the State's liquor tax to encourage and promote the establishment of a new industry and to help in stimulating the local fruit wine industry. *Id.* at 273, 82 L. Ed. 2d at 211. Thus, because the exemptions were motivated by an intent to confer a benefit upon local industries not granted to out-of-state industries, the Court held that the exemptions were invalid.

The facts in *Bacchus* are easily distinguished from the facts in this case. Here, section 105-164.4(a)(6) does not discriminate against Plaintiffs in favor of a local industry. Contrary to Plaintiffs' assertions, cable companies are no more "local" in nature than are satellite companies. Indeed, the record reveals that both businesses are interstate in nature, as they both utilize in-state and out-of-state equipment and facilities in providing service to North Carolina subscribers and both own property within the State of North Carolina. Thus, unlike the products exempted from Hawaii's liquor tax in *Bacchus*, neither satellite companies nor cable companies are properly characterized as an in-state or out-of-state economic interest. Moreover, there is no evidence in the record on appeal to suggest that the General Assembly enacted section 105-164.4(a)(6) to encourage and promote the cable industry, which we have already determined is not a local industry.

As section 105-164.4(a)(6) merely distinguishes between two methods of providing television service to North Carolina subscribers, and such distinctions are permissible under the Commerce Clause, we conclude section 105-164.4(a)(6) is not facially discriminatory.

## III.

Plaintiffs next contend that even if section 105-164.4(a)(6) is not facially discriminatory, the statute *discriminates in its practical effect* against television providers that use out-of-state delivery facilities in favor of those that use local facilities.

"[A] state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause." *American Trucking Ass'ns v. Scheiner*, 483 U.S. 266, 286, 97 L. Ed. 2d 226, 244 (1987) (citation omitted); *see also Best & Co., Inc. v. Maxwell*, 311 U.S. 454, 456-57, 85 L. Ed. 275, 278 (1940) (holding that a North Carolina statute that taxed out-of-state retailers for hotel room use was discriminatory in practical effect because it discriminated in favor of intrastate businesses). Only actual, rather than hypothetical, discrimination violates the Commerce Clause. *Associated Indus. of Missouri v. Lohman*, 511 U.S. 641, 654, 128 L. Ed. 2d 639, 651 (1994); *see also Gregg Dyeing Co. v. Query*, 286 U.S. 472, 481, 76 L. Ed. 1232, 1239 (1932) ("Discrimination . . . is a practical conception. We must deal in this matter . . . with substantial distinctions and real injuries."). Plaintiffs bear the initial burden of showing that a statute has a discriminatory effect on interstate commerce. *Hughes v. Oklahoma*, 441 U.S. 322, 336, 60 L. Ed. 2d 250, 262 (1979). If Plaintiffs meet that burden, the State bears the burden of establishing that the challenged tax "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278, 100 L. Ed. 2d 302, 311 (1988) (citations omitted).

In determining whether section 105-164.4(a)(6) violates the dormant Commerce Clause in its practical effect, we find the United States Supreme Court's decisions in *Amerada Hess*, 490 U.S. 66, 104 L. Ed. 2d 58 and *Exxon Corp.*, 437 U.S. 117, 57 L. Ed. 2d 91, instructive. In *Amerada Hess*, the United States Supreme Court held that a New Jersey statute that denied oil producers a state tax deduction for the federal "windfall profit tax" imposed on producers of crude oil did not discriminate against interstate commerce. *Amerada Hess*, 490 U.S. at 79, 104 L. Ed. 2d at 71. The plaintiffs in that case argued that the deduction denial discriminated against oil producers who market their oil in favor of independent retailers who do not produce oil. *Id.* at 78, 104 L. Ed. 2d at 70. Because New Jersey did not have any oil refineries, the plaintiffs argued that the state had singled out a business activity—oil production—conducted in other jurisdictions

for a special tax burden. *Id.* The *Amerada Hess* Court held that the statute did not violate interstate commerce, explaining that the oil producing plaintiffs

> operate both in New Jersey and outside New Jersey. Similarly, nonproducing retailers may operate both in New Jersey and outside the State. Whatever different effect the [deduction denial] may have on these two categories of companies results solely from differences between the nature of their businesses, [and] not from the location of their activities.

*Id.*

In *Exxon Corp.*, the United States Supreme Court reviewed a Maryland statute that prohibited oil producers or refiners from operating a retail service station within the state. *Exxon Corp.*, 437 U.S. 117, 57 L. Ed. 2d 91. Under the statute, all major oil companies, including Exxon, had to divest themselves of their retail service stations in the state. *Id.* at 125-26, 57 L. Ed. 2d at 100. Exxon argued that the statute protected in-state independent dealers in the gas retail market from out-of-state competition. The Court, noting that there were several major interstate marketers of petroleum that owned retail gas stations in Maryland that did not produce or refine gasoline, held that the relevant statute created no barriers, explaining,

> [the statute] does not prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market. . . . The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce.

*Id.* at 126, 57 L. Ed. 2d at 100. Thus, in *Exxon Corp.*, the Court determined that the dormant Commerce Clause prohibits discrimination against the interstate market for retail gasoline, but that it does not specifically protect retailers in the interstate market who are oil producers. *See also Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2d Cir. 2003) (relying on *Exxon*, the court held that the dormant Commerce Clause prohibits discrimination against the interstate market for retail cigarettes, but not discrimination against retailers in that market who sell cigarettes in a particular manner).

In the case *sub judice*, the relevant market is the interstate market for multichannel video programming. The relevant retailers are multichannel video programming service providers, including those

companies that deliver programming by satellite and those that deliver programming by cable. Based on the United States Supreme Court's reasoning in *Amerada Hess* and *Exxon Corp.*, we conclude that the dormant Commerce Clause prohibits discrimination against the interstate marketing for multichannel video programming, but that it does not necessarily prohibit discrimination against programmers in that market who deliver programming by satellite as opposed to cable.

Plaintiffs argue that their delivery of television programming is inherently out-of-state and, therefore, they are unfairly subjected to the tax imposed upon them in section 105-164.4(a)(6). Specifically, Plaintiffs contend that satellites are by definition placed in outer space and the tax imposed under section 105-164.4(a)(6), therefore, always discriminates against out-of-state businesses. However, the United States Supreme Court rejected a similar argument in *Amerada Hess*. The *Amerada Hess* Court specifically noted that the oil producers could not move their oil-producing activities to New Jersey because no oil reserves exist there. Thus, the oil producing gas retailers in *Amerada Hess* were as inherently out-of-state as Plaintiffs are in this case. Indeed, the Court considered this fact to show that the statute could not have been intended to induce the plaintiffs to move their oil-producing activities to New Jersey because there were no oil reserves in New Jersey. Likewise, section 105-164.4(a)(6) could not have been implemented to induce Plaintiffs to move their provision of satellite services to North Carolina because satellites, by their nature, are inherently out-of-state businesses. Given this fact, "it is difficult to see how [the statute] unconstitutionally discriminates against interstate commerce." *Amerada Hess*, 490 U.S. at 78, 104 L. Ed. 2d at 70.

Plaintiffs' reliance on *Granholm*, 544 U.S. 460, 161 L. Ed. 2d 796, is misplaced. In *Granholm*, the Court struck down a New York statute as violating the Commerce Clause where the statute forbade out-of-state wineries from making direct sales unless they first established a distribution operation in New York. *Id.* at 493, 161 L. Ed. 2d at 822. The United States Supreme Court concluded that this statute discriminated against interstate commerce because the mandate to build a distribution system in New York was an "additional step[] that drive[s] up the cost of [out-of-state] wine[,]" that in-state producers did not have to incur. *Id.* at 474-75, 161 L. Ed. 2d at 810.

In the case *sub judice*, even if Plaintiffs were to establish an in-state distribution system for the delivery of satellite programming,

DIRECTV, INC. v. STATE

[178 N.C. App. 659 (2006)]

they would still be subjected to the tax imposed under section 105-164.4(a)(6) because of the means that they use to deliver its services. Similarly, cable companies that have out-of-state distribution systems for the delivery of cable programming are still exempt from the tax imposed under section 105-164.4(a)(6) because of how they deliver their services. Thus, the geographical location of the business, whether in-state or out-of-state, has nothing to do with whether the business is subjected to the tax imposed under section 105-164.4(a)(6). Unlike the wineries in *Granholm*, whether a company is subjected to the tax under section 105-164.4(a)(6) depends only upon how companies deliver television programming services to its subscribers, and not whether the delivery of the programming services occurs inside or outside the state of North Carolina.

Plaintiffs further argue that section 105-164.4(a)(6) assesses a substantial cost disadvantage on satellite operators, and inhibits their ability to compete with cable companies. Specifically, Plaintiffs contend that the tax requires its subscribers to pay $30.00 per year more than cable subscribers. Plaintiffs' argument is not persuasive.

The statute does not require Plaintiffs to recoup the sales tax from its subscribers. Plaintiffs have elected to pay this tax by passing the costs to its subscribers. Moreover, although cable subscribers do not pay $30.00 per year in the sales tax imposed under section 105-164.4(a)(6), cable companies recoup local franchise taxes, which are approximately thirty-dollars per year, from their subscribers that satellite subscribers do not pay. Thus, as the title of the legislation that created section 105-164.4(a)(6)—"Equalize Taxation of Satellite TV and Cable TV"—suggests, *see* 2001 N.C. Sess. Laws. 424, § 34.17, the imposition of the sales tax on satellite companies has, in fact, equalized the local franchise taxes already imposed on cable companies.

Finally, the record is void of any evidence that this tax has created an undue burden on interstate commerce. Even after the imposition of the sales tax in 2002, Plaintiffs' number of subscribers and gross revenues have increased from 2001 to 2003 in North Carolina. Moreover, Plaintiffs' share of the North Carolina multichannel video programming market has continually increased and has remained higher than their share of the national multichannel video programming market. Therefore, Plaintiffs' success in this market with the imposition of the sales tax under section 105-164.4(a)(6) defeats any claims that they are being discriminated against in its practical effect. Because Plaintiffs have failed to provide sufficient

**KING v. WINDSOR CAPITAL GRP., INC.**

[178 N.C. App. 669 (2006)]

evidence that the tax discriminates against them in its practical effect; much less evidence so clear that no reasonable doubt can arise, section 105-164.4(a)(6) of the North Carolina General Statutes must be sustained against their constitutional challenge. *See E. B. Ficklen Tobacco Co. v. Maxwell*, 214 N.C. 367, 371, 199 S.E. 405, 408 (1938) (holding that an act of the General Assembly will not be held invalid as violative of the Constitution unless it so appears beyond a reasonable doubt).

Affirmed.

Judges GEER and STEPHENS concur.