NO. COA13-865

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

PBK HOLDINGS, LLC,
    Plaintiff,

v.                                    Rockingham County
                                      No. 13 CVS 417
COUNTY OF ROCKINGHAM,
    Defendant.


Appeal by plaintiff from order entered 25 June 2013 by Judge Richard L. Doughton in Rockingham County Superior Court. Heard in the Court of Appeals 9 December 2013.

> *Brooks Pierce McLendon Humphrey & Leonard, L.L.P., by Daniel F.E. Smith, S. Leigh Rodenbough IV, and Darrell A. Fruth, for plaintiff-appellant.*
>
> *The Brough Law Firm, by G. Nicholas Herman, and Rockingham County by Robert V. Shaver, Jr., County Attorney, for defendant-appellee.*


McCULLOUGH, Judge.


Plaintiff PBK Holdings, LLC, appeals from an order of the trial court, granting summary judgment in favor of defendant County of Rockingham, denying plaintiff's motion for summary judgment, and dismissing plaintiff's action. For the reasons stated herein, we affirm the decision of the trial court.

I.    Background

On 13 March 2012, defendant Rockingham County, by and through the Rockingham County Board of Commissioners, adopted an ordinance entitled "An Ordinance of the County of Rockingham, State of North Carolina, Adopting Zoning Changes to the Rockingham County Unified Development Ordinance." ("the ordinance"). The stated purpose of the ordinance was to:

> define high impact uses, to allow certain high impact uses to be approved through conditional zoning, to delete special use requirements for those uses now identified as high impact uses and to delete and add text to the table of permitted uses and other zoning sections to effect these changes.

"High impact uses" were defined as:

> those which by their nature produce objectionable levels of noise, odors, vibrations, fumes, light, smoke, traffic and/or other impacts upon the lands adjacent to them.

The following uses were considered high impact uses, "[e]ach use . . . grouped into categories based on the projected impact to the surrounding area[:]"

| CLASSIFICATION | USE |
| --- | --- |
| **Class I** | 1. Airstrips<br>2. Concrete suppliers (ready-mix) |
| **Class II** | 1. Chemical manufacturing and storage<br>2. Cement Manufacturers<br>3. Sawmills<br>4. Bulk Storage Facility of Flammables-<br>   Propane, Gasoline, Fuel Oil and Natural |

| | |
|---|---|
| | Gas<br>5. Scrap Metal Salvage Yards, Junkyards<br>6. Commercial Livestock Auction |
| **Class III** | 1. Commercial Incinerators<br>2. *Local Solid Waste Management Facilities/Landfills*<br>3. Chip Mills<br>4. Airports |
| **Class IV** | 1. Asphalt Plants<br>2. Hazardous Waste Facilities<br>3. Slaughtering and Processing Plants<br>4. Pulp and Paper Mills<br>5. Motor Sports Activities (i.e. racetracks and dragstrips) |
| **Class V** | 1. Explosives Manufacturing, Storage and Wholesale<br>2. *Regional Solid Waste Management Facilities/Landfills-Privately Owned*<br>3. Mining, Extraction Operations and Quarries (including sand, gravel and clay pits) |

(emphasis added).

On 12 March 2013, plaintiff PBK Holdings, LLC, filed a complaint against defendant. Plaintiff is a limited liability company, formed "for the purpose of acquiring, permitting, and developing a regional municipal solid waste ("MSW") landfill" in Rockingham County, North Carolina. Plaintiff alleged that it had a special use permit application pending in Rockingham County to develop a sanitary landfill and recycling facility that would accept more than 100,000 tons of MSW per year. Plaintiff stated that the proposed landfill would fall within the "Regional Solid Waste Management Facilities/Landfills-

Privately Owned" category. Therefore, plaintiff argued that it had a "specific and legal personal legal interest in the Rockingham County zoning ordinances that impact its plans to develop a landfill."

Plaintiff argued that it was directly and adversely affected by certain amendments adopted in the ordinance and challenged the following provisions: Chapter 2, Article VII, § 7-2.B (classifies "Local Solid Waste Management Facilities/Landfills" (hereinafter "local landfills") as a Class III high impact use and "Regional Solid Waste Management Facilities/Landfills-Privately Owned" (hereinafter "regional landfills") as a Class V high impact use); § 7-4.B (lists setback requirements from property line, rights-of-way, zoning districts and structures based on Class); and § 7-5.G (sets forth additional factors to be considered in approving Regional Municipal Solid Waste-Privately Owned Landfills). Plaintiff's complaint argued that defendant was preempted from adopting provisions in conflict with North Carolina law, that certain provisions exceeded the authority of the Board of Commissioners to adopt and defendant to enforce, that the ordinance violated the Equal Protection clauses of the United States and North Carolina Constitutions, and that the ordinance violated the

Commerce Clause of the United States Constitution. Based on the foregoing contentions, plaintiff argued that the trial court should enter declaratory judgment in favor of plaintiff, stating that the challenged portions of the ordinance were invalid.

On 22 April 2013, defendant filed an answer to the complaint.

On 10 June 2013, defendant filed a motion for summary judgment. On 13 June 2013, plaintiff also filed a motion for summary judgment.

Following a hearing held at the 24 June 2013 term of Rockingham Superior Court, the trial court entered an order granting defendant's motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing plaintiff's action on 25 June 2013.

Plaintiff appeals.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted).

> The moving party bears the burden of establishing the lack of a triable issue of fact. If the movant meets its burden, the nonmovant is then required to produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a *prima facie* case at trial. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.

*Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 706, 567 S.E.2d 184, 187 (2002) (internal citations and quotation marks omitted).

### III. Discussion

On appeal, plaintiff argues that the trial court erred by entering summary judgment in favor of defendant where (A) the ordinance's distinction between "local" and "regional" landfills violates the Equal Protection Clauses of the North Carolina and United States Constitutions; (B) the ordinance violates the Commerce Clause of the United States Constitution; and (C) the airport radius, floodplain, truck entrance, and "catch-22" provisions are preempted by State and Federal law.

### A. Equal Protection Clause

First, plaintiff argues that the trial court erred by entering summary judgment in favor of defendant where the ordinance's distinction between local and regional landfills violates the Equal Protection Clauses of the North Carolina and

United States Constitutions. Plaintiff asserts that although local and regional landfills are similarly situated, the ordinance imposes more stringent requirements on regional landfills than are imposed on local landfills. Furthermore, plaintiff argues that there is no legitimate purpose justifying the difference in landfill classifications and that distinctions between local and regional landfills are not rationally related to defendant's stated interests. We find plaintiff's arguments unpersuasive.

We note that

> [a] municipal ordinance is presumed to be valid . . . . [T]he burden is upon the complaining party to show its invalidity or inapplicability. And a municipal ordinance promulgated in the exercise of the police power will not be declared unconstitutional unless it is clearly so, and every intendment will be made to sustain it.

*Standley v. Town of Woodfin*, 186 N.C. App. 134, 140, 650 S.E.2d 618, 623 (2007) (citations and quotation marks omitted).

"The principle of equal protection of the law is explicit in both the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Constitution of North Carolina. This principle requires that all persons similarly situated be treated alike." *Dobrowolska v. Wall*, 138 N.C. App. 1, 14, 530 S.E.2d 590, 599 (2000) (citations omitted).

> The United States Supreme Court has explained that the purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. . . . Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike.

*Yan-Min Wang v. UNC-CH Sch. of Med.*, 216 N.C. App. 185, 202-03, 716 S.E.2d 646, 657-58 (2011) (citations and quotation marks omitted).

"Accordingly, to state an equal protection claim, a claimant must allege (1) the government (2) arbitrarily (3) treated them differently (4) than those similarly situated." *Lea v. Grier*, 156 N.C. App. 503, 509, 577 S.E.2d 411, 416 (2003). "Thus, [i]n addressing an equal protection challenge, we first identify the classes involved and determine whether they are similarly situated." *Yan-Min Wang*, 216 N.C. App. at 204, 716 S.E.2d at 658 (citation and quotation marks omitted).

In the present case, the two classes at issue are local and regional landfills. Plaintiff alleges that local and regional landfills are similarly situated because they are engaged in the

same activity – namely, the business of MSW disposal. Relying on the plain language definition of the terms "local" and "regional," plaintiff states that the only difference between these two classes is that local landfills accept waste from a "limited district, often a community or minor political subdivision" while regional landfills accept waste from "a geographical region" or "peripheral parts of a district." Based on the foregoing, plaintiff argues that the ordinance violates the Equal Protection Clause since "characterizations of waste based on its geographic origin have repeatedly been found groundless by the United States Supreme Court."

On the other hand, defendant contends that there is no dispute about the definitions of local versus regional landfills, arguing that the distinctions are made based on the general nature of their uses. Defendant asserts that it is common knowledge that regional landfills, which accept waste from areas within and outside of Rockingham County, are "typically larger, dispose of greater waste tonnage, and therefore may pose the risk of having greater adverse impacts upon the health, safety and welfare in contrast to purely local and less-intensive landfills that merely dispose of waste[] generated from within the local community."

Our review indicates that the ordinance defines high impact uses as "those which by their nature produce objectionable levels of noise, odors, vibrations, fumes, light, smoke, traffic and/or other impacts upon the lands adjacent to them." The categorization of high impact uses are based on the "projected impact to the surrounding area," resulting in five different classes. "Local Solid Waste Management Facilities/Landfills" are classified as a Class III high impact use, along with commercial incinerators, chip mills, and airports. "Regional Solid Waste Management Facilities/Landfills-Privately Owned" are classified as a Class V high impact use, along with explosives manufacturing, storage, and wholesale, as well as mining, extraction operations, and quarries. Although the ordinance distinguishes between local and regional landfills, it fails to provide a definition for "local" and "regional" landfills.

"When interpreting a municipal ordinance we apply the same principles of construction used to interpret statutes. Undefined and ambiguous terms in an ordinance are given their ordinary meaning and significance. . . . To ascertain the ordinary meaning of undefined and ambiguous terms, courts may appropriately consult dictionaries." *Morris Communs. Corp. v.*

*City of Bessemer*, 365 N.C. 152, 157-58, 712 S.E.2d 868, 872 (2011) (citations omitted).

"Local" is defined as "1. relating to place 2. of, characteristic of, or confined to a particular place or district 3. not broad; restricted; narrow." Webster's New World College Dictionary 842 (4th edition 2006). "Regional" is defined as "1. of a whole region not just a locality 2. of some particular region, district, etc.; local; sectional." Webster's New World College Dictionary 1206 (4th edition 2006). Applying these definitions to the ordinance, the use of the terms "local" and "regional" in reference to landfills suggests that the distinction lies in the size and location of the areas that the landfills serve.

However, assuming without deciding that the two classes involved in the present appeal are similarly situated for equal protection purposes, the next step in our analysis would be a determination of whether "the difference in treatment made by the law has a reasonable basis in relation to the purpose and subject matter of the legislation." *A-S-P Associates v. Raleigh*, 298 N.C. 207, 226, 258 S.E.2d 444, 456 (1979) (citation omitted).

> When a governmental classification does not burden the exercise of a fundamental right

> or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied. The "rational basis" standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government. Additionally, in instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity. Classifications are presumed valid; "under the lower tier, rational basis test, the party challenging the legislation has a tremendous burden in showing that the questioned legislation is unconstitutional."

*Huntington Props. v. Currituck County*, 153 N.C. App. 218, 230-31, 569 S.E.2d 695, 704 (2002) (citations omitted). Because the ordinance at issue here neither burdens a suspect class, nor affects a fundamental right, the ordinance need only to satisfy the rational basis level of scrutiny to withstand plaintiff's Equal Protection Clause challenges.

Defendant asserts, and we agree, that the objective of protecting the health, safety, and environment of the community by mitigating the adverse impacts of high impact uses is a conceivable and legitimate government interest. The differences in requirements set out in the ordinance between regional and local landfills, with regional landfills being subject to more stringent regulation based on their projected higher impact to

the surrounding area, are clearly rationally related to further defendant's conceivable, legitimate interest.

The ordinance provided that the purpose of its enactment was to

> define high impact uses, to allow certain high impact uses to be approved through conditional zoning, to delete special use requirements for those uses now identified as high impact uses and to delete and add text to the table of permitted uses and other zoning sections to effect these changes.

"High impact uses" are "those which by their nature produce objectionable levels of noise, odors, vibrations, fumes, light, smoke, traffic and/or other impacts upon the lands adjacent to them." The ordinance categorized regional landfills as a Class V high impact use along with "Explosive Manufacturing, Storage and Wholesale" and "Mining, Extraction Operations and Quarries (including sand, gravel and clay pits)" based on the higher impact of "objectionable levels of noise, odors, vibrations, fumes, light, smoke, traffic, and/or other impacts" to the surrounding area, as opposed to local landfills, which were categorized as a Class III high impact use. In addition, the affidavit of Kevan Combs, plaintiff's sole manager, member, and registered agent, indicated that plaintiff's proposed regional landfill would bring in more than 100,000 tons of MSW per year.

Because defendant's purposes in enacting the ordinance are undeniably legitimate governmental purposes and because application of the rational basis test to the challenged ordinance leads us to the conclusion that defendant's distinction between regional and local landfills furthers that purpose, we reject plaintiff's arguments that the ordinance violated the Equal Protection Clauses of the United States and North Carolina Constitutions. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of defendant on this issue.

## B.    Commerce Clause

Next, plaintiff argues that the trial erred by entering summary judgment in favor of defendant on the grounds that the ordinance violates the Commerce Clause of the United States Constitution. We are not persuaded by plaintiff's arguments.

> The United States Constitution expressly grants to Congress the power to "regulate [c]ommerce with foreign [n]ations, and among the several [s]tates[.] [T]he Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well" in that "'by its own force' [it] prohibits certain state actions that interfere with interstate commerce." The United States Supreme Court has explained that the "dormant" Commerce Clause means that "[a] State is . . . precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow

of trade between States."

It is well established that a law is discriminatory if it "tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State. "Discrimination" for purposes of the dormant Commerce Clause is "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."

*DirecTV, Inc. v. State of North Carolina*, 178 N.C. App. 659, 661-62, 632 S.E.2d 543, 546 (2006) (citations omitted).

Commerce Clause claims are subject to a two-tiered analysis. The first tier, a virtually *per se* rule of invalidity, applies where a state law discriminates facially, in its practical effect, or in its purpose. The second tier applies if a statute regulates evenhandedly and only indirectly affects interstate commerce. In that case, the law is valid unless the burdens on commerce are clearly excessive in relation to the putative local benefits.

*Waste Indus. USA, Inc. v. State*, __ N.C. App. __, __, 725 S.E.2d 875, 881 (2012) (citations omitted). "In either situation the critical consideration is the overall effect of the statute on both local and interstate activity." *North Carolina Ass'n of Elec. Tax Filers v. Graham*, 333 N.C. 555, 565-66, 429 S.E.2d 544, 550 (1993) (citation omitted).

i.    Facial Discrimination

Plaintiff contends that the ordinance is facially discriminatory. Plaintiff's argument presumes that regional landfills collect MSW from surrounding counties within North Carolina as well as southern Virginia, while local landfills collect MSW from only Rockingham County. By applying more stringent requirements for regional landfills, plaintiff asserts that the ordinance discriminates against out-of-state use of North Carolina landfill space.

It is well established that

> [a] state tax law is facially discriminatory where it (1) explicitly refers to state boundaries or uses other terminology that inherently indicates the tax is based on the in-state or out-of-state location of an activity; and (2) applies to entities similarly situated for Commerce Clause purposes. A facial challenge to a legislative act is . . . the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which [the ordinance] would be valid. Moreover, the challenger must demonstrate there is an "explicit discriminatory design to the [ordinance]."

*DirecTV, Inc.*, 178 N.C. App. at 663, 632 S.E.2d at 547 (citations omitted).

We note that the failure of the ordinance to define the terms "local" and "regional" compels us to apply the ordinary meanings of those words. Based on the plain language definition

of those terms – "local" meaning "1. relating to place 2. of, characteristic of, or confined to a particular place or district 3. not broad; restricted; narrow" and "regional" meaning "1. of a whole region not just a locality 2. of some particular region, district, etc.; local; sectional" – we hold that although the terms make a geographical distinction, they do not explicitly refer to state boundaries or inherently indicate that the applicability of the ordinance is based on the in-state or out-of-state location of an activity. *See* Webster's New World College Dictionary 842 and 1206 (4th edition 2006). Facially, this ordinance does not explicitly put greater burdens on MSW solely because it is generated from out-of-state because, as plaintiff acknowledges, regional landfills accept MSW from counties within North Carolina as well as MSW from out-of-state. In addition, the category of regional landfills also includes privately-owned landfills without distinguishing whether the privately-owned landfills accept in-state or out-of-state MSW. Furthermore, plaintiff has failed to demonstrate an explicit discriminatory design in the ordinance. Based on the foregoing, we conclude that the ordinance is not facially discriminatory.

### ii. Discrimination in its Practical Effect

In order to successfully argue that the ordinance is discriminatory in its practical effect,

> [p]laintiff[] bear[s] the initial burden of showing that a[n ordinance] has a discriminatory effect on interstate commerce. If Plaintiff[] meet[s] that burden, [defendant] bears the burden of establishing that the challenged [ordinance] "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."

*DirecTV, Inc.*, 178 N.C. App. at 665, 632 S.E.2d at 548 (citations omitted).

Plaintiff, relying on *Oregon Waste Systems v. Dep't of Envtl. Quality*, 511 U.S. 93, 128 L. Ed. 2d 13 (1994), argues that the "more numerous and rigorous zoning provisions [applicable] to regional landfills" are akin to heightened fees assessed on the disposal of out-of-state waste which have been held to violate the Commerce Clause. We disagree.

In *Oregon Waste*, the petitioners, who were solid waste disposers, challenged Or. Rev. Stat. § 459.297(1) which imposed a "surcharge" on "every person who disposes of solid waste generated out-of-state in a disposal site or regional disposal site" at $2.25 per ton. *Id.* at 96, 128 L. Ed. 2d at 19. "In conjunction with the out-of-state surcharge, the legislature imposed a fee on the in-state disposal of waste generated within

Oregon" at $0.85 per ton, "considerably lower than the fee imposed on waste from other States." *Id.* "Subsequently, the legislature conditionally extended the $0.85 per ton fee to out-of-state waste, in addition to the $2.25 per ton surcharge . . . with the proviso that if the surcharge survived judicial challenge, the $0.85 per ton fee would again be limited to in-state waste." *Id.* The United States Supreme Court held that the statute was *facially* discriminatory because the surcharge was based upon a geographic distinction, discriminating against interstate commerce. *Id.* at 100, 128 L. Ed. 2d at 22. Since the Oregon surcharge was held to be facially discriminatory, the *Oregon Waste* Court held that the "*per se* rule of invalidity" was the proper legal standard. "As a result, the surcharge must be invalidated unless respondents can sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 100-01, 128 L. Ed. 2d at 22 (citations and quotation marks omitted). Because respondents could not meet this burden, the surcharge was held to be in violation of the Commerce Clause.

Plaintiff's conclusory reliance on *Oregon Waste* is misplaced since we find the facts of the instant case distinguishable. First, we have previously held that the

ordinance is not facially discriminatory like the surcharge in *Oregon Waste*. Second, whereas it was clear to the Supreme Court in *Oregon Waste* that "the differential charge favor[ed] shippers of Oregon waste over their counterparts handling waste generated in other States," here, the ordinance is not explicitly based on in-state or out-of-state location of an activity. *Id.*

Plaintiff also argues that there is a discriminatory practical effect because the "restrictions applied to regional landfills also make it more difficult for out-of-state waste to be disposed of in landfills located in Rockingham County." As examples, plaintiff states that the "increased landscape buffer, fencing requirement, and need for dust control would increase the capital and operating costs for a regional landfill, which would increase the fees for such waste disposal." Plaintiff relies on *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res. et al*, 504 U.S. 353, 119 L. Ed. 2d 139 (1992), and *Exxon Corp v. Governor of Maryland*, 437 U.S. 117, 57 L. Ed. 2d 91 (1978) for his contentions.

In *Fort Gratiot*, the petitioner challenged a Michigan law that "prohibits private landfill operators from accepting solid waste that originates outside the county in which their facilities are located" unless the acceptance of solid waste not

generated in the county was explicitly authorized in the approved county solid waste management plan. *Fort Gratiot*, 504 U.S. at 355-57, 119 L. Ed. 2d at 144-45. The United States Supreme Court provided that "[a] state statute that clearly discriminates against interstate commerce is therefore unconstitutional 'unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id.* at 359, 119 L. Ed. 2d at 147 (citation omitted). Because "the statute afford[ed] local waste producers complete protection from competition from out-of-state waste producers who seek to use local waste disposal areas[,]" and because "Michigan [had] not identified any reason, apart from its origin, why solid waste coming from outside the county should be treated differently from solid waste within the county," the Supreme Court held that the contested Michigan law violated the Commerce Clause. *Id.* at 361, 119 L. Ed. 2d at 148.

The circumstances of the present case, however, are distinguishable from those found in *Fort Gratiot*. Most importantly, in *Fort Gratiot,* there was an outright prohibition against in-state disposal of waste that was generated outside of the state. In the present case, the ordinance merely imposed more stringent requirements on regional landfills that accepted

waste from both within the State of North Carolina and out-of-state. Defendant also identified reasons, apart from the origin of the waste to be disposed of and unrelated to economic protectionism, as to why there should be a distinction between local and regional landfills, including achieving the ordinance's objective to "mitigate[e] [the] traditional adverse impacts of a highly intensive use on water supplies, airport safety, access to public roads, noise, dust, distance from residences, and other health and safety concerns." Because the regional landfills are typically larger in size and dispose of greater amounts of waste, with this plaintiff accepting more than 100,000 tons of MSW per year, they pose a greater risk to the health, safety, and welfare of the community.

In *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 57 L. Ed. 2d 91 (1978), a Maryland statute provided that "a producer or refiner of petroleum products (1) may not operate any retail service station within the State, and (2) must extend all 'voluntary allowances' uniformly to all service stations it supplies." *Id.* at 119-20, 57 L. Ed. 2d at 96. The petitioners, who were producers of petroleum products, contended that the Maryland statute violated the Commerce Clause. The United States Supreme Court held that the statute did not violate the

Commerce Clause because it did not discriminate against interstate goods or distinguish between in-state and out-of-state companies. Because "Maryland's entire gasoline supply flows in interstate commerce and since there are no local producers or refiners, such claims of disparate treatment between interstate and local commerce would be meritless." *Id.* at 125, 57 L. Ed. 2d at 100.

Despite the holding, plaintiff cites to a footnote found in *Exxon Corp.* in support of the contention that "[if] the effect of a state regulation is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market . . . the regulation may have a discriminatory effect on interstate commerce." *Id.* at 126, 57 L. Ed. 2d at 100 n.16. Here, however, the effect of the ordinance is not to reduce the flow of out-of-state MSW and increase the share of in-state MSW, but rather to place more stringent requirements on landfills that are considered a higher class of high impact uses which by their nature produce higher levels of noise, odors, vibrations, fumes, light, smoke, traffic, etc.

The ordinance does not impact the disposal of MSW more heavily based on the fact that it is crossing state lines.

Moreover, because there is no evidence in the record that plaintiff's proposed landfill would have only accepted out-of-state MSW, the ordinance affected both in-state and out-of-state MSW as applied to this plaintiff.

Based on the aforementioned reasons, we hold that the ordinance is not discriminatory in its practical effect in violation of the Commerce Clause. Plaintiff's arguments are overruled.

## C. Preemption

In its third argument, plaintiff argues that the trial court erred by entering summary judgment in favor of defendant where the airport radius, floodplain, truck entrance, and "catch-22" provisions of the ordinance, applicable to regional landfills, are preempted by State and Federal law.

> A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:
>
> . . . .
>
> (2) The ordinance makes unlawful an act, omission or condition which is expressly made lawful by State or federal law;
>
> . . . .
>
> (5) The ordinance purports to regulate a

> field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation[.]
>
> . . . .
>
> The fact that a State or federal law, standing alone, makes a given act, omission, or condition unlawful shall not preclude city ordinances requiring a higher standard of conduct or condition.

N.C. Gen. Stat. § 160A-174(b)(2) and (5) (2013).

First, plaintiff challenges § 7-5.G.4.b (hereinafter "floodplain provision") and subsection c (hereinafter "airport radius provision") of the ordinance, which provides as follows:

> 4. A landfill shall not be located:
>
> . . . .
>
>> b. within the 100 year floodplain.
>> c. within five statute miles of the Rockingham County (Shiloh) Airport.

Specifically, plaintiff argues that the floodplain provision is preempted by N.C. Gen. Stat. § 130A-295.6(c)(1) and N.C. Gen. Stat. § 130A-294(a)(4)(c)(5).

N.C. Gen. Stat. § 130A-295.6(c)(1) (2013) provides that "[a] waste disposal unit of a sanitary landfill shall not be constructed within: (1) A 100-year floodplain or land removed

from a 100-year floodplain designation. . . ." N.C. Gen. Stat. § 130A-294(a)(4)(c)(5) (2013) provides the following:

> (a) The Department [of Environment and Natural Resources ("DENR")] is authorized and directed to engage in research, conduct investigations and surveys, make inspections and establish a state-wide solid waste management program. In establishing a program, the [DENR] shall have authority to (4) a. Develop a permit system governing the establishment and operation of solid waste management facilities. . . . c. The [DENR] shall deny an application for a permit for a solid waste management facility if the [DENR] finds that: 5. The proposed facility would be located in a natural hazard area, including a floodplain, a landslide hazard area, or an area subject to storm surge or excessive seismic activity, such that the facility will present a risk to public health or safety.

Plaintiff argues that while N.C. Gen. Stat. § 130A-295.6(c)(1) prohibits a landfill from being constructed within an 100-year floodplain, other portions of the landfill facility, "i.e. portions aside from the waste disposal unit," could be constructed in the 100-year floodplain so long as there is no public health or safety risk. In addition, plaintiff argues that since it is DENR's discretion to judge whether a landfill may be developed in a floodplain, the floodplain provision applies a "blunt, blanket prohibition against any portion of a

regional landfill from being built in a 100-year flood plain, even if the development is authorized by DENR." We find plaintiff's arguments meritless.

Pursuant to N.C. Gen. Stat. § 153A-136(a)-(b) (2013), a county has the authority to regulate "the storage, collection, transportation, use, disposal and other disposition" of solid wastes and to regulate such disposal and disposition by ordinance that is "consistent with and supplementary to any rules" adopted by the DENR. In addition, defendant is not prevented "from providing by ordinance or regulation for solid waste management standards which are *stricter or more extensive* than those imposed by the State solid waste management program and rules and orders issued to implement the State program." N.C. Gen. Stat. § 130A-309.09C(c) (2013) (emphasis added). That is exactly what the floodplain provision of the challenged ordinance does.

Next, plaintiff argues that the airport radius provision is preempted by state and federal law. Plaintiff asserts that although collectively, these state and federal laws provide a specific regulatory scheme addressing the siting of landfills near airports, the airport radius provision attempts to prohibit

landfills in locations where they are expressly permitted by state and federal law.

Plaintiff directs our attention to the following State regulations regarding MSW landfills near airports:

> (a) A new MSWLF unit shall be located no closer than 5,000 feet from any airport runway used only by piston-powered aircraft and no closer than 10,000 feet from any runway used by turbine-powered aircraft.
>
> (b) Owners or operators proposing to site a new MSWLF unit or lateral expansion within a five-mile radius of any airport runway used by turbine-powered or piston-powered aircraft shall notify the affected airport and the Federal Aviation Administration prior to submitting a permit application to the Division.
>
> (c) The permittee of any existing MSWLF unit or a lateral expansion located within 5,000 feet from any airport runway used by only piston-powered aircraft or within 10,000 feet from any runway used by turbine-powered aircraft shall demonstrate that the existing MSWLF unit does not pose a bird hazard to aircraft. The owner or operator shall place the demonstration in the operating record and notify the Division that it has been placed in the operating record.

15A N.C. Admin. Code 13B.1622(1)(a) – (c) (2012). In addition 40 C.F.R. § 258.10(a) (2013) states that

> Owners or operators of new MSWLF units, existing MSWLF units, and lateral expansions that are located within 10,000 feet (3,048

> meters) of any airport runway end used by
> turbojet aircraft or within 5,000 feet
> (1,524 meters) of any airport runway end
> used by only piston-type aircraft must
> demonstrate that the units are designed and
> operated so that the MSWLF unit does not
> pose a bird hazard to aircraft.

Our review indicates that defendant is correct in its argument that there is "nothing in the language of these State or federal regulations expressly or impliedly demonstrat[ing] any intent to preclude more stringent regulations on the siting of MSW landfills near airports." Thus, we reject plaintiff's assertions.

Next, plaintiff challenges the following provision of the ordinance applicable to regional landfills as being preempted by state law:

> a. The Truck entrance driveway shall be
>    located on or within two thousand (2000)
>    feet of a major arterial highway.

(hereinafter "truck entrance provision"). Plaintiff argues that the county does not have authority to regulate vehicular traffic on a State highway pursuant to N.C. Gen. Stat. § 153A-121(b) (2013) which provides as follows:

> This section does not authorize a county to
> regulate or control vehicular or pedestrian
> traffic on a street or highway under the
> control of the Board of Transportation, nor
> to regulate or control any right-of-way or
> right-of-passage belonging to a public

> utility, electric or telephone membership
> corporation, or public agency of the State.
> In addition, no county ordinance may
> regulate or control a highway right-of-way
> in a manner inconsistent with State law or
> an ordinance of the Board of Transportation.

We find that plaintiff's reading of the truck entrance provision rests upon a misapprehension. The truck entrance requirement does not regulate any vehicular traffic on a street or highway, but rather regulates the location of a driveway placed on a landfill. Therefore, we reject plaintiff's argument.

Lastly, plaintiff challenges the following provision of the ordinance as being preempted by State law:

> 3. An application for development approval
>    shall include all the site plans and
>    information submitted to the Department
>    of Environment and Natural Resources for
>    the permitting of a solid waste
>    management facility.

Plaintiff argues that this provision is preempted by N.C. Gen. Stat. § 13A-294(b1)(4) and 15A NCAC Admin. Code 13B.1618 which sets forth requirements for an applicant's permit for a MSW landfill. Further, plaintiff alleges that this provision places a landfill developer in a "catch-22" position because while state law prohibits the developer from submitting the application for a permit to DENR until the developer has

obtained local zoning approval, the ordinance prohibits local zoning approval for the landfill developer until *after* it has submitted the application for a permit to DENR. In other words, plaintiff argues that the ordinance precludes landfill developers from complying with both State and local law by requiring a developer to submit its permit application to DENR at a time when DENR prohibits such submission.

We find plaintiff's arguments to be based on a misreading of the challenged ordinance. The challenged provision does not require the developer to submit an application to the DENR but requires the developer to submit the "site plans and information" that must be submitted to the DENR for the permitting of a MSW landfill. Accordingly, we reject plaintiff's argument as it has no merit.

## IV. <u>Conclusion</u>

Based on the reasons stated above, we reject plaintiff's argument that the ordinance violates the Equal Protection and Commerce Clauses of the North Carolina and United States Constitutions and also reject plaintiff's arguments that certain provisions of the ordinance are preempted by state and federal law. The judgment of the trial court is affirmed.

Affirmed.

Chief Judge MARTIN and Judge ERVIN concur.